**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| CLUB 31 SPORTS BAR & LOUNGE, LLC a/k/a CLUB 31 SPORTS BAR & GRILL individually and on behalf of all others similarly situated, | Case No. _____ |
| | COMPLAINT |
| Plaintiff, | Class Action |
| v. | DEMAND FOR JURY TRIAL |
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, | |
| Defendant. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Club 31 Sports Bar & Lounge, LLC a/k/a Club 31 Sports Bar & Grill ("Plaintiff"), individually and on behalf of all others similarly situated, for its Class Action Complaint against Defendant Mesa Underwriters Specialty Insurance Company ("Defendant"), states and alleges as follows:

## NATURE OF ACTION

1. According to information published by the Insurance Information Institute, the U.S. insurance industry collected net premiums of $1.22 trillion in 2018. Premiums recorded by property/casualty insurers accounted for 51% of that amount. Between 2014 and 2018, these insurers wrote net premiums each year of between $497 billion to $612.6 billion but only incurred losses of between $277.7 billion and $360.9 billion.

2. Plaintiff is a small business that owns and operates Club 31 Sports Bar & Lounge a/k/a Club 31 Sports Bar & Grill, a restaurant and sports bar featuring live entertainment in Kansas City, Jackson County, Missouri.

1

3.      Plaintiff purchased an all-risk commercial property insurance policy from Defendant to protect it in the event of property loss and business interruption. COVID-19 and the resulting response by state and local governments have caused physical loss of Plaintiff's property and have interrupted Plaintiff's business. Yet, Defendant has refused to honor its promise to provide the protection that Plaintiff purchased. Moreover, Plaintiff is not unique. The insurance industry appears to be taking a uniform approach to the current pandemic: deny coverage even when the policy they drafted and offered to insureds, and the policy paid for by the insureds, does not contain an exclusion for pandemic-related losses. Plaintiff's policy with Defendant does not have a virus exclusion and exemplifies the broken promise from insurance companies across the country. As a result of COVID-19 and Stay at Home Orders (as defined below), Plaintiff has been forced to greatly reduce its operations.

4.      This is a class action for declaratory judgment and breach of contract arising from Defendant's refusal to pay claims related to COVID-19 as required by its property insurance agreements it sold to Plaintiff and other businesses.

5.      The novel coronavirus – named "severe acute respiratory syndrome coronavirus 2" or "SARS-CoV2" – has spread widely and rapidly across the United States. The illness related to SARS-CoV-2 is "novel coronavirus disease 2019," commonly abbreviated to "COVID-19." Although the virus and related illness are distinct, for purposes of this Complaint, Plaintiff refers to both interchangeably as "COVID-19."

6.      Over 89,000 Americans have died of COVID-19 as of the date of this filing, according to the Centers for Disease Control and Prevention ("CDC").

7.      A growing body of evidence suggests that the virus transmits both through droplets, when someone sneezes and coughs, and aerosols, which are produced by normal breathing.

8.     Aerosols are particularly concerning because unlike droplets, which stay airborne for only a few seconds, aerosols are water droplets suspended in air and can remain suspended for hours, until gravity ultimately forces them to the nearest surface below.

9.     Consequently, aerosols can spread widely through air flow and settle on surfaces hundreds of feet away from any infected individual. Thus, someone not even in the vicinity of an infected person can unknowingly touch an infected surface, later touch their face, and become infected.

10.     In an effort to combat the virus and slow the spread of COVID-19, state and local governments across the country have imposed directives requiring residents to remain in their homes except to perform certain "essential" activities, like shopping for food, going to see a doctor, or getting fresh air.

11.     The state and local directives typically require businesses deemed "non-essential" to be closed and in-person work is not permitted. But even businesses classified as "essential" have been severely impacted by the pandemic. For example, "essential" businesses have had to increase the frequency of cleaning, reduce hours, install new protective barriers between employee and customer, provide personal protective equipment to its workforce and prohibit customers from entering their facilities. But even with those precautions, many such business have had great difficulty retaining employees who fear becoming infected at work.

12.     Plaintiff is located in the City of Kansas City, Jackson County, Missouri. Kansas City, Missouri, Jackson County, Missouri, and the State of Missouri all have issued stay-at-home orders (hereafter, "Stay at Home Orders" or "Orders").

13.     The State of Missouri issued its stay at home order on April 6, 2020. On April 27, 2020, the State of Missouri issued the Show Me Strong Recovery Order ("Recovery Order"),

which extended many of the restrictions imposed by the Stay at Home Order through May 31, 2020. The Stay at Home Order and the Recovery Order (collectively, the "Missouri Orders") both have caused the suspension of non-essential and essential businesses. As a Missouri business, Plaintiff is subject to the Missouri Orders.

14.    The City of Kansas City and Jackson County issued their stay at home orders on March 24, 2020. Kansas City and Jackson County both have relaxed on a very limited basis some restrictions but others remain in effect.

15.    The Stay at Home Orders and the transmission of COVID-19 have had a devastating effect on Plaintiff's business. As a result of the Stay at Home Orders, Plaintiff ceased all in person operations, which resulted in the complete suspension of business.

16.    Plaintiff has suffered direct physical loss to the property. Although ingress and egress to the property currently is limited due to the Stay at Home Orders and transmission concerns, according to the World Health Organization ("WHO"), the incubation period for the coronavirus is at least 14 days. Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020 – weeks earlier than previously reported, suggesting that the virus has been circulated in the United States far longer than previously assumed. It is likely customers, employees, and/or other visitors to the insured property over the last two months were infected with the coronavirus and thereby caused physical loss and damage to the property.

17.    The transmission of COVID-19 and the Stay at Home Orders have otherwise affected Plaintiff's or other Class members' businesses. For example, customers cannot access the property due to the Stay at Home Orders or fear of being infected with or spreading COVID-19. Suppliers have also been similarly restricted by the pandemic.

4

18.     But Plaintiff, like countless other small businesses, prepared for an unexpected event like the COVID-19 pandemic. Specifically, Plaintiff purchased property insurance from Defendant that did not exclude pandemic coverage. A true and accurate copy of the Policy purchased by Plaintiff is attached hereto as Exhibit A.

19.     The Policy is comprised of a number of forms and endorsements that define the scope of coverage. Upon information and belief, the forms and endorsements used in Plaintiff's Policy are materially the same as those policies held by the members of the proposed class.

20.     The Policy is an all-risk policy, meaning it covers all losses for "direct physical loss" to the covered property "unless the loss is excluded or limited in this policy." Exhibit A at 71.

21.     As set forth below, the Policy also provide coverage for:

      a.     losses sustained due to the necessary suspension of Plaintiff's business operations caused by direct physical loss or damage ("Business Income" coverage) (*id.* at 87);

      b.     interruption of business caused by action of a civil authority ("Civil Authority" coverage) (*id.* at 88);

      c.     expenses incurred to minimize interruption of business ("Extra Expense" coverage) (*id.* at 87-88); and

      d.     expenses necessary to protect covered property from further damage in the event of a loss ("Sue and Labor" coverage) (*id.* at 91).

22.     On or about April 9, 2020, in response to Plaintiff's notices of claim, Defendant denied coverage and refused to cover Plaintiff's COVID-19 losses.

23.     Defendant has caused material harm to Plaintiff and the proposed class by refusing coverage under the Policy.

24.     On behalf of itself and the class, Plaintiff seeks to recover compensatory damages for breach of contract, as well as declaratory and injunctive relief.

## PARTIES

25.     Plaintiff Club 31 Sports Bar & Lounge, LLC, a/k/a Club 31 Sports Bar & Grill, is a Missouri limited liability company located in Kansas City, Jackson County, Missouri.

26.     Defendant Mesa Underwriters Specialty Insurance Company is an insurance company organized and existing under the laws of the State of New Jersey, with its principal place of business located in Branchville, New Jersey.

## JURISDICTION AND VENUE

27.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this judicial district and division. The Policy at issue covers Plaintiff's facilities located in the State of Missouri.

## FACTUAL BACKGROUND

29.     COVID-19 and the Stay at Home Orders have forced Plaintiff to suspend its business operations. Plaintiff's facilities are located in Kansas City, Jackson County, Missouri. There have been at least 10,000 confirmed cases of COVID-19 in the State of Missouri as of the date of this filing.

30.     On April 3, 2020, the State of Missouri issued a stay-at-home order "to protect public health and prevent the further spread of COVID-19."[1] The Stay at Home Order required individuals residing in Missouri to avoid leaving their homes except as necessary to perform

---

[1]     https://governor.mo.gov/priorities/stay-home-order

limited activities and to at all times practice social distancing. Starting May 3, 2020, Missouri lifted the absolute ban on leaving home, but left in place substantial restrictions, including requiring social distancing and limiting the number of people permitted in an establishment to just 25% of capacity.

31.     On April 27, 2020, Missouri issued the Recovery Order.[2] Although the Recovery Order lifted the absolute ban on leaving home for non-essential activities, it still imposes substantial restrictions on all Missourians. For example, it continues to require residents to at all time practice social distancing. The Recovery Order requires individuals performing job duties that require contact with other people closer than six feet to "take enhanced precautionary measures to mitigate the risks of contracting or spreading COVID-19." The State of Missouri further directs Plaintiff to pay special care to "[s]anitation, including disinfection of common and high-traffic areas" and to "follow" any guidance provided by the [CDC]."[3]

32.     On March 22, 2020, the City of Kansas City, Missouri issued a stay-at-home order prohibiting individuals from leaving their residences except to perform "Essential Activities," as defined in the order. The order also required all "non-essential" businesses to cease in-person operations. As defined in the order, "Essential Businesses," include things like healthcare operations, essential infrastructure, and grocery stores. On April 16, 2020, Kansas City extended the Order through May 15, 2020. And although certain restrictions have been lifted, bars and restaurants are required to space tables at least 10 feet apart and/or seat parties at least six feet apart which greatly reduces total available restaurant capacity.

---

[2]     https://governor.mo.gov/sites/gov/files/media/pdf/2020/04/Economic-Reopening-Phase-1.pdf

[3]     https://governor.mo.gov/show-me-strong-recovery-plan-guidance-and-frequently-asked-questions

7

33.     On March 24, 2020, Jackson County, Missouri issued a stay-at-home order similarly requiring individuals in the county to avoid leaving their homes except as necessary to perform limited activities and to at all times practice social distancing.

34.     As of April 17, 2020, at least 42 states and countless local governments had issued substantially similar directives. The purpose of these orders is to mitigate and slow the spread of COVID-19.

35.     According to the CDC, everyone is at risk of getting COVID-19. The virus can spread by respiratory droplets when an infected person coughs, sneezes, or talks. A person can become infected from respiratory droplets or potentially by touching a surface or object that has the virus on it and then by touching the mouth, nose, or eyes.[4] According to studies, the virus can live on surfaces for several days if not longer.[5]

36.     In addition, some scientific publications have reported finding COVID-19 in the air. The New England Journal of Medicine reported finding that experimentally-produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infectivity during a 3-hour period of observations. "Aerosols from infected persons may therefore pose an inhalation threat even at considerable distances and in enclosed spaces…."[6]

37.     A consensus appears to be emerging that COVID-19 can travel through the air via aerosols. For example, aerosol scientist Lidia Morawska of the Queensland University of Technology in Brisbane, Australia told *Nature* that, "In the minds of scientists working on this, there's absolutely no doubt that the virus spreads in the air. This is a no-brainer."[7]

---

[4]     https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf
[5]     https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf
[6]     https://www.nejm.org/doi/full/10.1056/NEJMc2009324
[7]     https://www.nature.com/articles/d41586-020-00974-w

8

38.	An April 2020 study published in the journal *Emerging Infectious Diseases* found a wide distribution of COVID-19 on surfaces and in the air about *13 feet* from patients in two hospital wards in Wuhan, China, leading the authors to conclude that the virus spreads in aerosols in addition to large respiratory droplets. The investigators found evidence of the virus in swabs of floors, computer mice, trash bins, bed handrails, patients' face makes, health workers' personal protective equipment, and air vents.[8]

39.	The authors also surmised that the high rate of positivity for floor samples in the hospital strongly suggest that droplets fall to the ground and then are spread via patients' shoes. For example, every sample tested from the pharmacy floor tested positive for COVID-19 even though no patients were housed there.[9]

40.	Another study conducted in Wuhan indicates that staff movement, floor cleaning, and the removal of personal protective equipment could transmit the virus through the re-suspension of virus-contaminated aerosols.[10]

41.	Kimberly Prather, an aerosol chemist at the University of California, San Diego told *Science* magazine: "I'm relieved to see aerosolization is accepted. This added airborne pathway helps explain why it is spreading so fast."[11]

42.	Aerosol particles are held in the air by physical and chemical forces. The suspended particles remain for *hours or more*, depending on factors such as heat and humidity. If virus particles can be suspended in air for more than a few seconds, like, for instance, the measles virus can, then anyone passing through could become infected by a pathogenic aerosol cloud. And the

---

[8]	https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces

[9]	https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces

[10]	https://www.biorxiv.org/content/10.1101/2020.03.08.982637v1

[11]	https://www.sciencemag.org/news/2020/04/you-may-be-able-spread-coronavirus-just-breathing-new-report-finds#

virus can travel long distances and land on surfaces, only to be stirred back up into the air later by cleaning or other disturbances.

43. The SARS virus that caused a 2003 epidemic is a coronavirus and is similar to COVID-19. As a result, the behavior of SARS during the 2003 epidemic provided evidence about any aerosol risk from COVID-19.

44. A 2014 analysis published in the journal *Clinical Infectious Diseases* investigated a seemingly puzzling outbreak in a Hong Kong apartment complex whose residents had not been in close contact with each other.[12] The study found that "airborne spread was the most likely explanation, and the SARS coronavirus could have spread over a distance of 200 meters," or about 600 feet.[13]

45. The implications of airborne spread of the virus are extremely serious. Airborne spread means that the virus can travel long distances from any infected person. It can then infect someone who unknowingly walks through a pathogenic cloud. It can also infect someone by settling on a physical surface, which someone touches and later becomes infected. And regardless of the transmission method, the evidence suggests that COVID-19 can be transmitted by shoes even once it reaches the ground.

46. State and local governments have determined that without the Stay at Home Orders, COVID-19 could spread rampant throughout the community.

47. The Stay at Home Orders in and around Plaintiff's place of business also explicitly acknowledge that COVID-19 causes direct physical damage and loss to property:

---

[12]    https://academic.oup.com/cid/article/58/5/683/365793

[13]    *Id.*

10

a. In response to the pandemic, the City of Kansas City, Missouri, issued Order 20-01 stating that "the City wishes to employ all means available under the law to protect public life, health, safety and **property** to limit the development, contraction and spread of COVID-19"[14] (emphasis added);

b. The "Public Health Emergency Order" issued by Clay County, Missouri, states that the "County wishes to employ all means available under the law to protect public life, health, safety and **property** to limit the development, contraction and spread of COVID-19"[15] (emphasis added);

c. The Johnson County, Kansas Order states that COVID-19 "endanger[s] health, safety and welfare of persons and **property** within the border of Johnson County, Kansas" and that it "remains a public disaster affecting life, healthy, **property**, and the public space."[16] (emphasis added);

48. In order to protect itself against risks like COVID-19, Plaintiff purchased the Policy from Defendant. The Policy was in effect at the time of the outbreak and remains in effect today. Plaintiff paid all premiums required by the Policy.

49. Plaintiff is the Named Insured under the Policy.

50. Defendant is the effective and liable insurer of the Policy and policies meeting the class definition.

---

[14]     http://mediaassets.kshb.com/NWT/Sam/Mayor%20Lucas%20Stay%20at%20Home%20Order.pdf?_ga=2.87564241.83785035.1587504680-1549958454.1581544124
[15]     https://www.clayhealth.com/DocumentCenter/View/1009/Clay-County-Public-Health-Emergency-Order---Updated-32220
[16]     https://www.jocogov.org/sites/default/files/documents/CMO/JoCo%20Public%20Health%20Officer%20Stay%20at%20Home%20Order%203-22-20.pdf

11

51.     Generally, under property insurance policies like those issued by Defendant to Plaintiff and class members, the insuring agreements provide coverage for all risks of physical loss or damage to property, unless specifically excluded.

52.     The Policy is an "all-risk" policy. It covers risks "of direct physical loss unless the loss" is excluded or otherwise limited. Ex. A. at 71.

53.     The Policy does not exclude or limit coverage for losses from COVID-19 or pandemics.

54.     The risk of a virus like COVID-19 was foreseeable to, if not foreseen by, insurance companies like the Defendant. The Insurance Services Office ("ISO"), an organization that provides policy writing services to insurers, has recognized for years that a virus can constitute physical damage to property. Specifically, in 2006, it announced the submission of an exclusion of loss "due to disease-causing agents such as viruses and bacteria."

55.     In connection with circulating the virus exclusion, it sent the following statement to state insurance regulators:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

56.     Despite the availability of a specific exclusion for viruses, Plaintiff's Policy contains no relevant exclusion. Nor does Plaintiff's Policy contain an exclusion for "pandemics," "communicable disease," or anything similar.

12

57.     Because damage due to viruses constitutes physical damage and loss under the Policy, and/or the Stay at Home Orders have caused Plaintiff to have lost the use of its premises for their intended purpose, Plaintiff's losses are covered under the Policy.

58.     The Policy provides coverage for several different types of losses arising from COVID-19 that are relevant here through specific Coverage Extensions:

59.     Defendant is obligated to pay for actual loss of **"Business Income"** sustained due to direct physical loss or damage. Exhibit A at 87. Such losses are defined as actual losses. *Id.* Plaintiff has suffered lost business income because it has reduced operations of its business due to COVID-19.

60.     Defendant also agreed to provide coverage from an interruption to business caused by action of a **"Civil Authority."** Exhibit A at 91. Specifically, Defendant agreed to pay for the "actual loss of Business Income" sustained when action of a civil authority prohibits access to the covered property. *Id.* Access has been restricted to the Plaintiff's property due to the presence and threat of COVID-19 as the Stay at Home Orders have prohibited customers from entering Plaintiff's bar and grill.

61.     Defendant also agreed to pay for **"Extra Expense."** Exhibit A at 87. Extra Expenses are costs that Plaintiff "would not have incurred if there been no direct physical loss or damage." *Id.* at 87. Plaintiff has incurred Extra Expenses because it has suspended operations due to COVID-19 to prevent physical damage to the premises by the presence or proliferation of the virus and the physical harm it could cause persons present there.

62.     Finally, the Policy also provides **"Sue and Labor"** coverage, which requires the insured to pay all expenses borne by the Insured to protect the covered property from further

damage. Exhibit A at 91. Plaintiff has taken such steps by, for example, complying with the Stay At Home Orders.

63.     Losses caused by COVID-19 and the related state and local Stay at Home Orders triggered these provisions of Defendant's Policy. Specifically, Plaintiff's full operations have been largely suspended, and it has lost revenue and business opportunities.

64.     Plaintiff submitted a claim to Defendant for coverage under the Policy, but Defendant has denied Plaintiff's claims.

## CLASS ACTION ALLEGATIONS

65.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of himself and all others similarly situated, and seeks to represent the following nationwide classes:

      a.   **Nationwide Declaratory Judgment and Injunctive Class.** All businesses subject to a Stay at Home Order that are covered by one of the Defendant's policies which contains **Business Income, Civil Authority, Extra Expense,** and/or **Sue and Labor** coverage on terms similar to the Plaintiff's policy ("Policies") which were in effect during the COVID-19 pandemic.

      b.   **Nationwide Breach Class.** All policyholders of Defendant who made a claim and were denied coverage under one of Defendant's Policies due to COVID-19.

      c.   **Missouri Subclass.** All policyholders who purchased one of Defendant's Policies in Missouri and were denied coverage due to COVID-19.

Excluded from the Class is the Defendant, any entity in which the Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives,

14

heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

66.     Plaintiff's Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

67.     **Numerosity**. COVID-19 has impacted thousands of businesses across the country and Defendant is a nationwide insurer with, on information and belief, hundreds or more policies issued with the relevant provisions. Consequently, the Classes each number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Moreover, because the members of the Classes are geographically dispersed across the country, and members of the Missouri Subclass are geographically dispersed across the state, if not elsewhere, joinder of all Class members in a single action is impracticable. Class members and Missouri Subclass members may be informed of the pendency of this class action through direct mail or other means based on Defendant's records of its policyholders.

68.     **Commonality**. There are questions of fact and law common to the Classes that predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

a.      Do the Policies cover losses resulting from the COVID-19 pandemic?

b.      Do the Policies cover losses resulting from state and local Stay At Home Orders requiring the suspension or reduction in business?

c.      Has Defendant wrongfully denied claims for business losses resulting from COVID-19 and/or the Stay at Home Orders?

d.      Does the **Business Income** coverage of the Policies cover losses caused by suspension of business due to COVID-19 and/or the Stay At Home Orders?

e.      Does the **Civil Authority** coverage of the Policies cover losses caused by suspension of business due to Stay At Home Orders issued by state and local governments?

f.      Does the **Extra Expense** coverage of the Policies cover losses incurred to minimize the harm to Plaintiff and members of the Class' premises because of COVID-19 and/or the Stay At Home Orders?

g.      Does the **Sue and Labor** coverage of the Policies cover losses caused by suspension in business due to COVID-19 and/or the Stay At Home Orders?

h.      Has Defendant breached its Policies by refusing to cover COVID-19 related losses?

i.      Are Class members entitled to reasonable attorneys' fees and expenses?

69.     **Predominance.** The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein. Specifically, thousands of business are impacted by Defendant's denial of coverage for COVID-19 losses and their claims arise from a common factual predicate, which is the nationwide shutdown and suspension of activities due to the virus.

70.     **Typicality.** Plaintiff's claims are typical of those of the Classes as Plaintiff was subject to the same or similar policy provisions and the losses for all members relate to COVID-19 and the related closure orders and the claims arise from the same legal theories.

71.     **Superiority**. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the Class and Missouri Subclass. The presentation of separate actions by individual Class members and Missouri Subclass members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests.

72.     **Adequacy**. Plaintiff is an adequate representative of the Class and Missouri Subclass because it is a member of the Classes and its interests do not conflict with the interests

of those Plaintiff seeks to represent. The interests of the Class members will be fairly and adequately protected by Plaintiff and its counsel, who have extensive experience prosecuting complex class litigation.

73.     **Declaratory Relief and certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure**. On information and belief, Defendant has refused, or intends to refuse, coverage due to COVID-19 business interruption and other covered losses for all, or most, policyholders with covered Policies and final injunctive and/or declaratory relief mandating that Defendant cover the losses of Class members is appropriate respecting the class as a whole.

74.     **Issue Class and Modification of Class Definitions and Creation of Subclasses**. In the alternative, Plaintiff reserves the right to seek certification of one or more common issues pursuant to Rule 23(c)(4). In addition, Plaintiff reserves the right to modify the definitions of the class and/or create subclasses either by amendment to the complaint or by motion for class certification, including but not limited to subclasses for policyholders with each of the following provisions in the Policies: **Business Income, Civil Authority, Extra Expense,** and/or **Sue and Labor** and/or other subclasses as may be appropriate or necessary.

## COUNT I: DECLARATORY AND INJUNCTIVE RELIEF – BUSINESS INCOME
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and Missouri Subclass)

75.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

76.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

77.     An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies. Plaintiff requested coverage for COVID-19 related losses through its agent. Defendant responded with a letter denying coverage. Moreover, upon information and

belief, Defendant has refused other, similar claims claiming that COVID-19 losses are not covered by the Policies.

78.     Plaintiff contends that Defendant has breached the Policies in the following respects:

a.      Plaintiff and the class have suffered losses covered by the Business Income coverage in the Policies.

b.      Defendant is obligated to pay Plaintiff and the class for those losses.

c.      Defendant has failed to pay Plaintiff and the class for those losses.

79.     Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and request the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

80.     Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Business Income (and Extra Expense) Coverage Form; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT II: BREACH OF CONTRACT – BUSINESS INCOME
### (On behalf of Nationwide Breach Class and Missouri Subclass)

81.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

82.     Plaintiff and the class purchased property coverage policies from Defendant.

83.     The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

84.     Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of their claims. Alternatively, Defendant has

18

waived any terms or conditions of coverage and may not assert any term or condition in the Policies as a defense to liability.

85. Plaintiff and the class have sustained a loss under the Business Income coverage in the Policies arising from the COVID-19 virus and associated state and local Stay at Home orders.

86. Defendant has not agreed to pay the claim for Business Income or requested a proof of loss and has denied coverage.

87. Defendant has denied claims for Business Income related to COVID-19 on a uniform and class-wide basis, in breach of the policies.

88. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## COUNT III: DECLARATORY AND INJUNCTIVE RELIEF – CIVIL AUTHORITY
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and Missouri Subclass)

89. The preceding paragraphs are incorporated by reference as if fully alleged herein.

90. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

91. An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

92. Plaintiff contends that Defendant has breached the Policies in the following respects:

a. Plaintiff and the class have suffered losses covered by the Civil Authority coverage in the Policies.

b. Defendant is obligated to pay Plaintiff and the class for those losses.

c. Defendant has failed to pay Plaintiff and the class for those losses.

19

93.     Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

94.     Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Civil Authority coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

### COUNT IV: BREACH OF CONTRACT – CIVIL AUTHORITY
**(On behalf of Nationwide Breach Class and Missouri Subclass)**

95.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

96.     Plaintiff and the class purchased property coverage policies from Defendant.

97.     The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

98.     Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of their claims. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policies as a defense to liability.

99.     Plaintiff and the class have sustained a loss under the Civil Authority coverage in the Policies arising from the COVID-19 virus and associated state and local Stay At Home Orders.

100.    Defendant has not agreed to pay the claim for Civil Authority or requested a proof of loss.

101.   Defendant has denied claims for recovery under the Civil Authority coverage in the Policies related to COVID-19 and the Stay at Home Orders on a uniform and class-wide basis, in breach of the Policies.

102.   As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## COUNT V: DECLARATORY AND INJUNCTIVE RELIEF – EXTRA EXPENSE
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and Missouri Subclass)

103.   The preceding paragraphs are incorporated by reference as if fully alleged herein.

104.   The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

105.   An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

106.   Plaintiff contends that Defendant has breached the Policies in the following respects:

a.   Plaintiff and the class have suffered losses covered by the Extra Expense coverage in the Policies.

b.   Defendant is obligated to pay Plaintiff and the class for those losses.

c.   Defendant has failed to pay Plaintiff and the class for those losses.

107.   Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

108.   Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage

21

in conduct in breach of the Policies in regards to coverage decisions under the Extra Expense coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

### COUNT VI: BREACH OF CONTRACT – EXTRA EXPENSE
**(On behalf of Nationwide Breach Class and Missouri Subclass)**

109.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

110.    Plaintiff and the class purchased property coverage policies from Defendant.

111.    The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

112.    Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of their claims. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policies as a defense to liability.

113.    Plaintiff and the class have sustained a loss under the Extra Expense coverage in the Policies arising from the COVID-19 virus and associated state and local Stay At Home Orders.

114.    Defendant has not agreed to pay the claim for Extra Expense or requested a proof of loss.

115.    Defendant has denied claims for recovery under the Extra Expense coverage in the Policies related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

116.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

### COUNT VII: DECLARATORY AND INJUNCTIVE RELIEF – SUE AND LABOR
**(On behalf of Nationwide Declaratory Judgment and
Injunctive Class and Missouri Subclass)**

117.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

22

118. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

119. An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

120. Plaintiff contends that Defendant has breached the Policies in the following respects:

a. Plaintiff and the class have suffered losses covered by the Sue and Labor provision in the Policies.

b. Defendant is obligated to pay Plaintiff and the class for those losses.

c. Defendant has not paid for those losses and is in breach.

121. Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

122. Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Sue and Labor provision; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT VIII: BREACH OF CONTRACT – SUE AND LABOR
### (On behalf of Nationwide Breach Class and Missouri Subclass)

123. The preceding paragraphs are incorporated by reference as if fully alleged herein.

124. Plaintiff and the class purchased property coverage policies from Defendant.

23

125. The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

126. Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of their claims. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policies as a defense to liability.

127. Plaintiff and the class have sustained a loss covered by the Sue and Labor provision in the Policies arising from the COVID-19 virus and associated state and local Stay at Home orders.

128. Defendant has not agreed to pay the claim under the Sue and Labor provision or requested a proof of loss.

129. Defendant has denied claims for recovery under the Sue and Labor provision related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

130. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

a. That the Court enter an order certifying the class, appointing Plaintiff as representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

b. For a judgment against Defendant for the causes of action alleged against it;

c.     For compensatory damages in an amount to be proven at trial;

d.     For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policies;

e.     For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policies;

f.     For pre-judgment and post-judgment interest at the maximum rate permitted by law;

g.     For Plaintiff's attorney's fees;

h.     For Plaintiff's costs incurred; and

i.     For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


Date: May 18, 2020               Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*s/ Patrick J. Stueve*
Patrick J. Stueve, MO #37682
Bradley T. Wilders, MO #60444
Curtis Shank, MO #66221
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    816-714-7100
Facsimile:     816-714-7101
Email:         stueve@stuevesiegel.com
Email:         wilders@stuevesiegel.com
Email:         shank@stuevesiegel.com

**LANGDON & EMISON LLC**

J. Kent Emison, MO #29721
911 Main Street
PO Box 220

25

Lexington, Missouri 64067
Telephone:     (660) 259-6175
Facsimile:     (660) 259-4571
Email:         kent@lelaw.com

**MILLER SCHIRGER LLC**

John J. Schirger, MO # 60583
Matthew W. Lytle, MO #59145
Joseph M. Feierabend, MO #62563
4520 Main Street, Suite 1570
Kansas City, MO 64111
Telephone:     (816) 561-6500
Facsimile:     (816) 561-6501
Email:         jschirger@millerschirger.com
Email:         mlytle@millerschirger.com
Email:         jfeierabend@millerschirger.com

**SHAFFER LOMBARDO SHURIN, P.C.**

Richard F. Lombardo  MO# 29478
James D. Myers  MO# 46374
Dawn M. Parsons  MO# 42046
Michael F. Barzee  MO# 65764
Rachael D. Longhofer  MO# 71402
2001 Wyandotte Street
Kansas City, MO 64108
Telephone:     816-931-0500
Facsimile:     816-931-5775
Email:         rlombardo@sls-law.com
Email:         jmyers@sls-law.com
Email:         dparsons@sls-law.com
Email:         mbarzee@sls-law.com
Email:         rlonghofer@sls-law.com

*Attorneys for Plaintiff and the Proposed Classes*

26